Please be seated. Thank you. Please call the first case of the afternoon. 14-001 Anthony Seminary v. A.P.B.F. Frank. Now, you may proceed. Thank you. May it please the Court. We are here today because we believe... Who are you? Oh, Rajesh Khannuri of KPLR representing BFM. Thank you. No problem. We are here today because we believe the Commission's decision was against a manifest weight of the evidence. As we are aware, for a decision to be against a manifest weight, an opposite conclusion must clearly be apparent. The opposite conclusion in this case is that the petitioner was injured as a result of and during the course of employment. This Honorable Court has already decided the points of this issue in this case. In University of Illinois v. Industrial Commission, this Honorable Court held that a claimant's testimony standing alone may be sufficient to support an award of benefits under the Act. This Honorable Court held that medical testimony is not essential to support the conclusion that an accident caused a claimant's condition of ill-being. And finally, this Honorable Court also held in that case that circumstantial evidence can be used to prove a causal nexus between an accident and the claimant's injury. In this case, the conclusion that the petitioner was injured as a result of and during the course of employment is clearly apparent, especially when we go through the Commission's decision. And then to what's clearly apparent, the claimant testified for almost a month following the alleged accident. He continued working his regular, full-duty job without restrictions and did not report the accidental injuries to anyone. That is correct. Now, does that weigh in his favor? No, but the thing is, is that he did report it within the notice period of 45 days. And that is the more important thing. And he actually testified when he asked why not to do it. And that was on page of the record, on page 102. He testified actually on the record, on page 92, sorry, of the record. When he asked why he did not report it right away, I felt a bit embarrassed to go to management and say, oh, there's a twing in my back. First point is related to the statements made by Ms. McCoy. The Commission makes an issue with the fact that the injury was not reported to Ms. McCoy. It is irrelevant whether or not she was notified of the accident because the issue of whether notice was timely was not an issue in this case. Wait a minute, wait a minute. That testimony wasn't in there to prove notice. That testimony was in there to prove he wasn't injured. Injured people generally tell other people they're hurt. That's why it's in there. It's not there for notice purposes. But the point is, is that they're using, it becomes a punitive point if we say how long it takes to report the injury. Why does it become a punitive point? If I fall down these stairs and break my leg, I'm going to tell somebody about it today. If nobody witnesses my accident and I come back 45 days from now and say, you know, back there on February 9th, I fell down the stairs and I really hurt my leg. But I didn't tell anybody and I didn't go for medical treatment, guess what? The Commission can turn around and say, Hoffman, you ain't telling the truth. That never happened. I agree. But here the problem was this started off he felt was a twinge that degenerated over time. So I would akin this to somebody who says, thinks that he just has a minor back issue like a sprain or something that's going to go away on its own. And that's not what happened. It degenerated rapidly over time. And as soon as it degenerated to the point where he realized what it was, he did notify his employer. All right. Let's consider your argument for a second. You're saying, well, you know, he didn't want to make anything out of it. It was minor. It was going to go away. He was embarrassed to report it to his employer. Okay. Let's assume that's a plausible argument. Unless I misread something in the record, he goes to see Dr. Comfort about three days after the accident. He's talking to his treating doctor, and he doesn't mention anything about this back injury. Actually, there's two pieces of evidence to show that he did mention it. He testifies himself in the record that he did mention it. But does Dr. Comfort have it in his records anymore? No. But Dr. Ronald Michael, in his letter dated July 18, 2011, which is page 282 of the record, says, as you know. And he goes into the chronology. So between those two, it is plausible, easy to infer that Dr. Comfort did not. These are all inferences the commission could have drawn but didn't. They don't have to. Yes. That's true. They don't have to. But they have to apply the same standard when they're doing these inferences. They took one inference one way in saying that we don't believe him. But even though there's evidence there, they didn't acknowledge this evidence existed. Do they have to? Where does it say they have to? If they have to, they might as well take the entire record and bind it with a front page and a back page and say in here is where you're going to find why we did what we did. They don't have to write it down. They've got to give reasons for why they ruled. And they did. Yes. And one of the reasons was, is that one of the most critical reasons they gave was related to, for example, was the fact of the notice issue. But with the notice issue, he has a justifiable explanation. So if he has a justifiable explanation that is supported by the medical records, then at that point in time, they should make it address that issue. By not addressing that point, then we don't know, did they acknowledge that point existed at all? That is the question that's why it's like that. They're questioning whether he ever even had an accident. The arbitrator finds that other than the petitioner's testimony of a minor twinge in his lower back on June 14, 2001, there is nothing to corroborate his testimony either from other witnesses or histories of injury recorded by medical providers. In fact, all other testimony in this matter refutes the account of a work injury by the petitioner. They have found no accident. But in her own statement there on page 282 of the record, which says it's nothing, I refer back to page 282 of the record where Dr. Ronald Michael goes through the whole chronology. And his records were admitted into evidence. So? So that shows that either they missed these records or they didn't consider this at all. Counsel, they didn't miss anything. They didn't believe him. They didn't believe him because nobody witnessed the accident. He didn't tell anybody about the accident. He didn't tell Dr. Comfort about it. We read these things all day. So they didn't believe him and they didn't want to come out and call him a liar. Well, the question then is. Based on the above, the arbitrator finds the petitioner failed to prove by credible evidence presented that he sustained an accidental injury. So the question becomes then is what more would he have to prove? How about a witness? But in this situation. The witnesses record made contemporaneous with the injury, telling the doctor what caused the injury. How about medical testimony that somehow connects it up? I mean, there's a lot of ways you can do it. And we would argue that he did connect it to the medical testimony. Specifically with Dr. Ronald Michael's medical testimony. He did connect it there. The question here and the way I look at this issue is. When an employee gets injured on the job site, yes, he has a duty to report. He should report it right away. But the question here is what was the mindset? He clearly states his mindset at that point in time was he didn't think it was going to be a big deal. Can you explain why he referenced an accident from years earlier and not the one three days after this alleged I mean, you can't say he's not comfortable with his doctor. He's talking about a 2007 accident and doesn't mention the one he just sustained three days earlier. Does that make any sense? No, but in his own testimony, he says that he did talk about both accidents. Right. And you're an advocate for your client. We understand that. But looking at this objectively, there's an accident unwitnessed by anyone. Never reported to the employer for a month. Never mentioned in the treating physician's records. You can't see why the commission would question his credibility? Well, the way I would look at this is, for example, in this scenario, is that if we look at it from this following fact pattern, he did tell Dr. Comfort. Let's assume for the fact he did. Dr. Comfort did not put it into his records. That's fine. But how do we know that? Why should we even assume that? Because he testified to it. I'm giving you a scenario. I want to explain the scenario. Under the scenario that he did tell him that Dr. Comfort did not put it in, but Dr. Michael mentions it and says, as you are aware, this in many ways is the same as not putting something in that's erroneous as putting something that's not erroneous. Is the best way? Let me rephrase that so it makes more sense. You should. Yeah. What is an omission of an obvious of an omission of a statement can be viewed here in some ways similar to putting in something totally wrong, like mentioning him as a female or mentioning something else that makes no sense in correlation to it.   He testified to the fact that Dr. Comfort did not put it in his records. For example, the reason why I was citing the University of Illinois was in the University of Illinois, in that case, she testified they testified the nurse wrote down that she fell, slipped and fell on some mice. Right. Later on. It was all the other testimony went to something else. They were able to negate that in that case. Specifically. Can you do something? And this is a challenge here. All right. Yeah. Is there any evidence to support your side of the case that doesn't stand or fall or emanate from the claimant? Now, you're saying he said this, he said that. Yeah. It's in the documents. No, it's a document later. Is there any evidence to support the claimant's position other than evidence that stems from or emanates from the claimant himself? No. There is? No. There is no evidence outside of what he told the doctors and what's going on that emanates from this himself. Okay. So the case basically, to be candid, sort of stands or falls on the claimant's credibility, doesn't it? To a degree, yes. But here's the one thing I would like to mention, though. To go back to the major point here and the major point that it comes to is that it might agree to come and fall at the claimant's testimony, but then we have to look at the other testimony that she did mention. For example, Mr. Chmielewski, I know I'm mispronouncing the name and I do apologize. In the record, in her test, in her opinion, the commission states in their opinion that she saw her every five to ten minutes. That's not what he testified to in the thing. Actually, in his thing, when he was talking about it, he testified on pages 99 and 100 of the record and again on page 102 of the record. On page 102, he said, I see, Mr. Semery, five or ten minutes and that's about it. Right? Then he goes out to say what his job is for the time when he's there. He states on page 102, actually, most of the time I'm in the office. We have computer work that I have to do. We have guys on a dock. I'm also supervising the workers on the dock. So I'm back and forth and in and out of the office. He's all over the place. Okay. So you're questioning the credibility of the employee's, employer's witnesses. Tell us very succinctly then what evidence, why should we find the commission's decision is against the manifest way. The opposite conclusion is clearly apparent. Give us very succinctly in summary form why you should overturn the commission's decision. The reason why is, is that, a couple of points. One, Ms. McCoy's credibility is in question because she refers to an incident at South Bend. There was never anything at South Bend. It's Indianapolis. Let's throw out the employer's, all their evidence. Why would you prevail in this case? The reason why I would argue we should prevail in this case, if we take out all the employer's and everything else is, is that when he does talk about it, it pops up where it finally popped with Dr. Ronald Michael, his testimony. It's very clear how it happens. If you compare the testimony he gave to Dr. Ronald Michael on July 11th or 12th, when you compare that testimony to what he testified to, it matches up perfectly, which goes to exactly that it was actually more likely to not happen. He doesn't change it around. It doesn't go like, I was lifting a pallet here and then here I was lifting pipes or something else. It's exact testimony that he gave before in his testimony. The records in that are exactly succinct. That's why we're viewing that if you're going to make this a credibility issue, the credibility should be on his side, especially when you factor in the errors that the commission made in its own decision and the information it presented and tried to argue as saying valid. The biggest one being Mr. Chmielewski saying that he saw him every five to ten minutes versus I only saw him five to ten minutes and that there's no medical testimony, no medical records or anything like that to support, which is also not accurate compared to here. Thank you, counsel. Counsel, you may respond. Thank you. May it please the Court, my name is John Campbell. I'm here on behalf of the Appellee ABF. Counsel, good morning. Good afternoon, I should say. Judging from the questions, I think some of the points I was going to make were already disseminated. Yes, I will do so. What would you add to them? The only thing to add about Dr. Michael, which seems to be the focus of my opponent's argument, by that point the claimant had reported an injury. It's the day after he realized he had a positive MRI and had a serious issue with his back. So he went to work the next day and reported an injury and then goes to the doctor and there begins the story of a work accident. The Court was correct to ask questions of my opponent, I think, about the chronology of events before that. This claimant admits he didn't report an injury, admits he worked full duty, he was perfectly fine. The reason I called all those people and had them testify was to ensure that the claimant couldn't come in and say he reported it to some of these people in Indianapolis or in Aurora. I did that before the hearing. That was in deposition testimony. So he couldn't come in and say he named any one of these individuals that he did not report in a timely fashion. Again, I think this Court is correct to point out that when he first went to the doctor, he had no report of injury. In fact, the only reference is to his 2007 claim. And the arbitrator certainly was within their discretion, the commission as well, based on a factual determination to find that this gentleman did not meet his burden of evidence. And at this level, this Court certainly does not have the burden to determine whether or not the claim was truthful or not, simply whether the arbitrator and commission had a reasonable basis. They certainly did so based on the absence of cooperating evidence, and I would ask for an affirmation accordingly. Thank you. Thank you, counsel. Counsel, you may reply. In relation to the 2007 claim, it was resolved in 2008. Petitioner testified in the record that he returned back to his job and doing the same job as before, which is a heavy lifting job. And from 2008 until now, when this incident occurred in 2011, I do agree that we are looking at this as an issue of why did he report it a month late. That is what this comes down to, his credibility in relation to that. But we have to look at the totality of the incident. He has given a really good explanation. He thought it was going to be a minor thing. But what happened? It started degenerating, degenerating, degenerating. What did he do? He went to see the doctors. When the doctors found there was a problem, he went and reported it and explained where it was related to. All right? That is the thing. And there was no intervening as a thing. If you look at the record, there was no car accidents. There wasn't him, like, building a house or doing anything of that nature or anything which would require heavy manual labor equivalent to what his job was at the time. Didn't he have a preexisting condition, though? Yes. But he went more than three years without treatment. That's the thing. Doing the same job he was doing before that accident. When you make a counsel's argument, he raises the specter that, you know, it was only after the doctor told him that he had a serious problem that he reported the accident. What's your response to that? My response to that is that's when he realized this was no longer a minor problem. That's why he reported it. This wasn't a minor backache or twinge that went away. We all have days, like I even had it when I get up from my chair the wrong way and it hurts for a second or something of that nature. And it hurts for, like, a little bit and it goes away. That's what he looks like his mindset was. When it no longer was that mindset, what did he do? He went back and he reported it. So for a month it was just a sheer coincidence. For a month it's very minor, doesn't trouble him at all, no big deal. A couple days after he sees the doctor, all of a sudden it got worse? No. It was degenerating. That's why he kept seeing the doctor to the point where he couldn't function anymore. And that's when he got worse and he reported it. And he testifies in the record how a week or two later he was driving to Michigan. No problems on the trip. Nothing wrong on the trip. But the pain was just getting worse and worse. He had to stop every 15, 20 minutes. And then he comes back and then he sees the doctor, figures out what's wrong, and then he goes forward and tells them this is related to this. What we're asking for is either one of two things. Either we ask you to remand it back to the commission and ask them to consider all this evidence, to issue a new decision, or file for the petitioner and ask that the petitioner's injury is causing a rising out of and during the course of employment. I thank you for your time. Thank you, counsel, both for your arguments. This matter will be taken under advisement and a written disposition shall be issued. Thank you very much.